| PAOLA BEZEK, | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-1087 (JCH) |
| v. | : | |
| | : | |
| NBC UNIVERSAL ET AL., | : | MAY 23, 2018 |
| Defendants. | : | |

**RULING ON MOTION TO DISMISS OR COMPEL ARBITRATION (DOC. NO. 20),**
**CROSS-MOTIONS TO CONFIRM AND VACATE FINAL ARBITRATION AWARD**
**(DOC. NOS. 34 & 36), AND MOTION TO AMEND COMPLAINT (DOC. NO. 25)**

This case comes before the court pursuant to a Complaint filed by the plaintiff, Paola Bezek ("Bezek"), against the defendants, NBC Universal and NBC Sports Group (collectively "NBC"). See Complaint ("Compl.") (Doc. No. 1). Bezek, proceeding pro se, asserts state and federal discrimination claims arising out of her employment with NBC. See id.

NBC was served with the Complaint on November 6, 2017. See Acknowledgement of Service (Doc. No. 16). On January 5, 2018, NBC filed a Motion to Compel Arbitration and Dismiss, asserting that the claims raised in Bezek's Complaint were subject to a valid and enforceable arbitration agreement. See Motion to Compel (Doc. No. 20) at 1. Bezek objected to NBC's Motion to Compel on February 26, 2018, denying NBC's allegations that she had agreed to arbitrate claims arising out of her employment. See Memorandum in Opposition re Motion to Compel ("Pl.'s Opp.") (Doc. No. 28) at 11–12. On March 19, 2018, NBC filed both a Reply to Bezek's Opposition to their Motion to Compel, see Reply Memorandum in Support of Motion to Compel ("NBC's Reply") (Doc. No. 31), and a Motion for Confirmation of Final Arbitration Award ("Mot. to Confirm") (Doc. No. 34). Bezek filed a Motion to Vacate the Final Arbitration

Award on April 10, 2018.  <u>See</u> Motion to Vacate Final Arbitration Award ("Mot. to Vacate") (Doc. No. 36).  In other words, before the parties finished briefing the Motion to Compel, a final arbitration award issued in an arbitration underlying the above-captioned case, which award the parties have cross-moved to confirm or to vacate.

During the same time period, on February 11, 2018, Bezek moved to amend her Complaint to add claims of libel and slander.  <u>See</u> Motion to Amend ("Mot. to Am.") (Doc. No. 25) at 1.  NBC filed an opposition to the Motion to Amend on March 5, 2018. <u>See generally</u> Memorandum in Opposition ("Opp. to Am.") (Doc. No. 28).

## I.     FACTS

The plaintiff, Paola Bezek, was initially hired by NBC as a Manager of Shipping and Export Controls in the News Field Operations Group on October 25, 2010.  <u>See</u> Exh. E, Motion to Compel ("2010 Offer Letter") (Doc. No. 20-2) at 70–72.  From 2010 to 2013, Bezek worked in that position at an NBC facility in New York City.  <u>See</u> Memorandum in Support of Motion to Compel ("NBC's Mem.") at 2.  In 2013, Bezek applied for a position with the NBC Olympics team and was offered the position of Manager Technical Logistics in the NBC Olympics Production Logistics Department on June 4, 2013.  <u>See</u> Exh. H, Mot. to Compel ("2013 Offer Letter") (Doc. No. 20-2) at 77– 78.  That division is located in Stamford, Connecticut.  <u>See</u> NBC's Mem. at 2.

Both the 2010 and 2013 Offer Letters expressly conditioned Bezek's employment with NBC on her agreeing to be bound by NBC's alternative dispute resolution program, "Solutions."  <u>See</u> 2010 Offer Letter ("This offer is made expressly contingent on your . . . agreement to be bound by Solutions — An Alternative Dispute Resolution Program as evidenced by your signing the Solutions Agreement Form."); 2013 Offer Letter ("The agreements you previously signed regarding Solutions: An Alternative Dispute

Resolution Program . . . shall remain in full force and effect. . . .  If all of the above contingencies are satisfied, which constitutes your acceptance of this offer, you will begin your employment on June 24, 2013.").

NBC asserts that, in order to accept her new position in 2013, Bezek was required to open an offer letter email, click on an acceptance link, and accept three acknowledgements.  See Declaration of Jennifer Rubin, NBC's Reply ("Rubin Decl.") (Doc. No. 31) at 18–19.  The second of the three acknowledgements states as follows:

> I acknowledge that I have received and reviewed a copy of "Solutions: an Alternative Dispute Resolution Procedure" ("Solutions").  I agree to resolve disputes in accordance with the terms of Solutions and, accordingly, I waive the right to pursue any Covered Claims (as defined in Solutions) against the Company (1) in court or (2) on a class action basis either in court or through Solutions.

Exh. H, Mot. to Compel ("2013 Acceptance") (Doc. No. 20-2) at 77–78.  NBC further asserts that Bezek would have had to electronically sign the form by typing her full name and creating a unique pin with the last four digits of her Social Security Number and the month and day of her birth.  See Rubin Decl. at 19.  Finally, NBC asserts that Bezek had to click a button on the acceptance form in order to submit it to human resources.  Id.  In support of its position, NBC submits a Declaration of Jennifer Rubin, Director of Human Resources for the NBC Sports Group, and a print-out of the acceptance form.  See Rubin Decl. at 16; 2013 Acceptance.

Bezek states that she does not recall seeing or completing the 2013 Acceptance form, and argues that NBC must have forged the document attached to their Motion to Compel as Exhibit H, what the court refers to as the "2013 Acceptance."  See Exh. J, Pl.'s Opp. (Doc. No. 27) at 51–52.  Bezek generally argues that her employment with

NBC was not contingent upon her agreeing to be bound by Solutions.[1]  See Pl.'s Opp. at 11.

NBC further asserts that Bezek completed a mandatory e-learning training on an updated version of Solutions in January 2011.  In support of that assertion, NBC attaches a print-out of Ms. Bezek's training history at NBC, which includes a record that Ms. Bezek completed a course entitled "Solutions for New Hires, Rehires, and Transfers" on January 10, 2011.  Exh. D, Motion to Compel (Doc. No. 20-2) at 39.

In her Opposition, Bezek states that she "did not train" and has not seen "any online 'Solutions Levels by mediation or Arbitration packet.'"  Pl.'s Opp. at 11.  However, in the same paragraph she states, "In January 2011 [she] took an online HR solutions video."  Id.

NBC attaches a copy of the Solutions manual, dated January 28, 2011, to its Motion to Compel.  See Exh. D, Mot. to Compel ("Solutions Manual") (Doc. No. 20-2) at 38–68.  The Solutions Manual describes the Solutions process as "a structured dispute resolution procedure that consists of two internal levels of review followed by, if necessary and applicable, outside mediation (Level III) and arbitration (Level IV)."  See Solutions Manual at 40.  The Solutions Manual details procedures for all four levels of dispute resolution, including Level IV, arbitration.  See id. at 54–61.  The Solutions Manual defines "Covered Claims" as "all claims that arise out of or are related to an employee's employment or cessation of employment . . . , where a court in the

---

[1] The court notes that Bezek actually states that she "denies the solution's dispute resolutions was not contingent upon her employment."  Pl.'s Opposition at 11.  Liberally construing Bezek's pro se pleadings, the court construes this statement as a denial that her employment was contingent upon agreeing to Solutions.

4

jurisdiction in question would otherwise have the authority to hear and resolve the claim under any federal, state or local . . . statute, regulation or common law," including "[c]laims relating to compensation, promotion, demotion or other employment actions," "[c]laims relating to involuntary terminations, such as layoffs and discharges," and "[e]mployment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law." Id. at 43.

The Solutions Manual also contains a section entitled "Exclusivity of Arbitration for Covered Claims; Injunctive Relief; Individual Nature of Covered Claims," which section states, "Covered Employees and the Company are not allowed to litigate a Covered Claim in any court." Id. at 45.

In addition, the Solutions Manual contains a provision selecting New York law as governing law. Id. at 48 ("This Agreement shall be construed, interpreted and applied in accordance with the law of the State of New York, without regard to choice of law principles.").

Bezek's employment with NBC was terminated on October 30, 2015. See Mot. to Compel at 4; Pl.'s Opp. at 13. On November 2, 2015, Bezek filed a complaint through then-counsel at the Boyd Law Group with the Connecticut Human Rights Office ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). See Pl.'s Opp. at 13; Mot. to Compel at 5; CHRO-EEOC Complaint, Compl. ("CHRO Complaint") (Doc. No. 1) at 12–25.

In the CHRO Complaint, Bezek alleges that, from December 2012 to December 2014, she had an "intermittent and tumultuous" relationship with a man named Fred

Espinosa ("Espinosa"), which involved physical and emotional abuse and stalking.

CHRO Complaint at 18.  Bezek further alleges that, beginning in March 2015 and

continuing through August 2015, Espinosa learned that Bezek had commenced a

relationship with another man, which led him to start contacting Bezek again, including

calling, texting, and showing up at both her house and her place of employment in

Stamford, Connecticut.  Id.  Bezek further states in the CHRO Complaint that, in August

2015, she saw Espinosa at the security office in the NBC Stamford location and learned

that Espinosa had obtained freelance employment from NBC.  Id. at 18–19.  Bezek

informed her supervisor and human resources staff that she was concerned for her

safety and well-being in light of Espinosa's recent conduct and history.  Id. at 19.  She

was advised to obtain a restraining order against Espinosa, which she applied for in

Connecticut Superior Court and which application was granted.  Id.  NBC then

undertook an "investigation" of the nature and history of the relationship between Bezek

and Espinosa, including requesting documentation of all communication between Bezek

and Espinosa from Bezek.  Id. at 20.  Finally, Bezek states in the CHRO Complaint that

her employment was suspended on October 9, 2015, and ultimately terminated on

October 30, 2015.  Id. at 21.  Bezek alleges that NBC discriminated against her on the

basis of sex and her status as a victim of domestic violence and retaliated against her.

Id. at 17.

In June 2016, counsel from the Boyd Law Group withdrew from representing

Bezek.  See Mot. to Compel at 5.  On November 6, 2016, new counsel for Bezek—

Axelrod and Associates—sent counsel for NBC a form entitled "Solutions Issue

Resolution Procedure Level I – Submission Form."  See Exh. K, Mot. to Compel

("Mediation Request") (Doc. No. 20-2) at 88–89.  The Mediation Request form is signed

by Bezek under date of October 28, 2016, and requests to "skip Level I and submit

concern(s)/claim(s) initially at Level II."  Id. at 89.  In the cover letter attached to the

Mediation Request form, counsel for Bezek states, "Please note, we have opted to skip

Level I and proceed to Level II.  It would be our preference to skip directly to Level III

(Mediation), if possible."  Id. at 88.

A mediation took place pursuant to Solutions Level III on February 24, 2017, in

Connecticut.  See Pl.'s Opp. at 6.  Bezek, who relocated to Florida in 2016, appeared by

telephone.  See id. at 5–6.  That mediation was not successful.  Id. at 7.

On May 22, 2017, counsel for Bezek and NBC sent a letter via email to the JAMS

Resolution Center, which letter stated:

> Enclosed please find the employment arbitration demand
> served by claimant Paola Bezek on respondent NBCUniversal
> Media, LLC.  The parties are commencing the arbitration
> pursuant to Solutions, the alternative dispute resolution
> procedure to which the parties agreed during Ms. Bezek's
> employment with NBCUniversal.  A copy of the employment
> document in which the parties agreed to resolve dispute via
> Solutions is enclosed, as is a copy of the Solutions Procedure.

Exh. M, Mot. to Compel (Doc. No. 20-2) at 98.

Bezek asserts that her former counsel at Axelrod and Associates was not

authorized to initiate arbitration with NBC.  See Pl.'s Opp. at 7–8.  In support of that

argument, Bezek attaches email correspondence from former counsel at Axelrod and

Associates dated March 30, 3017, which correspondence states, "I have been tied up

all afternoon.  I would like to talk tomorrow early afternoon.  Your arbitration notice is

filed.  Remember that we have not committed to future representation at this point."

Exh. C, Pl.'s Opp. (Doc. No. 27-1) at 7.  Based on this correspondence, Bezek asserts,

"It is clear that former counsel made an error as there was not a valid retainer in place between plaintiff and his law firm to move forward with Arbitration." Pl.'s Opp. at 7–8.

On June 1, 2017, an attorney from Axelrod and Associates sent an email to JAMS and counsel for NBC notifying them that Axelrod and Associates was no longer representing Bezek in the matter. See Exh. N, Mot. to Compel (Doc. No. 20-2) at 100.

On August 9, 2017, a JAMS case manager sent Bezek and counsel for NBC a notice entitled "Commencement of Employment Arbitration." Exh. E, Pl.'s Opp. (Doc. No. 27-1) at 14–15. That document included a list of proposed arbitrators. See id. Counsel for NBC reached out to Bezek suggesting retired judge Anthony J. Carpinello for the matter. See id. at 13. On August 16, 2017, Bezek emailed the JAMS case manager, stating as follows:

> I had emailed [counsel for NBC] on 8/14 to pause this commencement . . . as this is something they have chosen to [sic] forward with not me. I have not consent any commencement, sign any sort of documentation to move forward, therefore NBC Universal/Sports should not assume any commencement or process regarding my complaint.
>
> . . . . As I mentioned before, I have [sic] given [sic] the right to sue therefore I have submitted my complaint to the CT Federal Court.

Exh. F, Pl.'s Opp. (Doc. No. 27-1) at 17.

A preliminary hearing, by conference call, was scheduled for November 20, 2017. Bezek emailed a JAMS employee on November 16, 2017, to inform JAMS that she did not consent to arbitration and did not intend to participate in the conference call. See Exh. I, Pl.'s Opp. (Doc. No. 27-1) at 28. The preliminary hearing went forward on November 20, 2017. See Exh. H, Pl.'s Opp. (Doc. No. 27-1) at 23–26. Counsel for NBC was present, but Bezek was not. See id.

No additional hearings were held in the arbitration.  On November 20, 2017, NBC

filed a Motion for Summary Disposition, to which Bezek did not respond.  See Final

Arbitration Award, Mot. to Compel (Doc. No. 34) at 4–10.  On February 8, 2018,

Arbitrator Mark Segall ("Arbitrator Segall") issued a final arbitration award (the "Award")

granting the Motion for Summary Disposition filed by NBC and dismissing all claims in

the arbitration.  See id. at 8.

On June 30, 2017, Bezek filed a Complaint in the above-captioned case.  See

Compl. (Doc. No. 1).  The Complaint is identical to the Specification of Claims submitted

in the underlying arbitration, except that the date of submission is different and the

damages analyses differ slightly.  Compare Compl. with Exh. B, Mot. to Compel (Doc.

No. 20-2) at 16–26.  Like the CHRO Complaint described above, Bezek alleges state

and federal claims of discrimination on the basis of sex and her status as a victim of

domestic violence as well as retaliation.

## II.    MOTIONS TO CONFIRM AND VACATE ARBITRATION AWARD (DOC. NOS. 34 & 36)

NBC moves to confirm the Award issued by Arbitrator Segall on February 8,

2018, and Bezek moves to vacate that Award.  See Mot. to Confirm (Doc. No. 34); Mot.

to Vacate (Doc. No. 36).  NBC moves pursuant to section 9 of the FAA, title 9 section 9

of the United States Code, which provides that, within one year of the issuance of an

arbitration award, "any party to the arbitration" may apply for confirmation of that award

and the court "must grant such an order unless the award is vacated, modified, or

9

corrected as prescribed in section 10 and 11 of [the FAA]."[2]  9 U.S.C. § 9 (emphasis

added).  As this language reflects, the court must grant NBC's Motion to Confirm unless

it grants Bezek's Motion to Vacate.

Bezek moves to vacate the Award pursuant to section 10 of the FAA, title 9

section 10 of the United States Code.  See generally Mot. to Vacate.  Section 10 of the

FAA provides that awards may be vacated under the following circumstances:

> (1) where the award was procured by corruption, fraud, or
> undue means;
>
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing
> to postpone the hearing, upon sufficient cause shown, or in
> refusing to hear evidence pertinent and material to the
> controversy; or of any other misbehavior by which the rights
> of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite
> award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  The Second Circuit has held that arbitrators are entitled to "great

deference" and parties attempting to vacate awards bear a "heavy burden of showing

---

[2] Section 9 further provides that, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award" and have "specif[ied] the court" then the specified court must confirm the award.  9 U.S.C. § 9.  In addition, "[i]f no court is specified . . . then such application may be made to the United States court in and for the district within which such award was made."  Id.  The court notes that there is no agreement between the parties choosing the District of Connecticut as the court to confirm awards and, further, that it is far from clear that the Award at issue was "made" in the District of Connecticut.  However, the Second Circuit has held that the venue provisions of section 9 are "permissive," expanding rather than limiting jurisdiction.  See, e.g., Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 706 (2d Cir. 1985) ("Once a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted."); id. ("[T]he venue provision of section 9 should be read as permissive rather than exclusive.").  Because this court has jurisdiction over this case without regard to the FAA's venue provisions, the court concludes that it may properly entertain NBC's Motion to Confirm and Bezek's Motion to Vacate.

that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). "[T]he burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award so long as 'there is a barely colorable justification for the outcome reached.'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 103–04 (2d Cir. 2013) (quoting Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008).

In her Motion to Vacate, Bezek raises arguments under all four of the bases for vacatur articulated in section 10. Therefore, the court addresses each basis for vacatur in turn.

A.    Corruption, Fraud, or Undue Means

Pursuant to section 10(a)(1) of the FAA, title 9 section 10(a)(1) of the United States Code, an arbitral award may be vacated if the movant makes it "abundantly clear that [the award] was obtained through corruption, fraud, or undue means." Kolel Beth Yechiel Mechil, 729 F.3d at 104 (quoting Karppinen v. Karl Kiefer Mach. Co., 187 F.2d 32, 34 (2d Cir. 1951)).

Although Bezek generally alleges that the Award was "procured by fraud and undue means," she neither cites specific facts nor provides evidence to support this allegation. Mot. to Vacate at 8. Instead, Bezek cites what appears to be a case in which a JAMS arbitral award was vacated based on a Texas statute. Id. Assuming, for the sake of argument, that the case to which Bezek cites did result in the vacatur of a JAMS award, that outcome is irrelevant in this case.

Bezek also cites the court to Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir. 1988), for the proposition that "perjury constitutes fraud within the

meaning of the [FAA]." Mot. to Vacate at 8. The court does not dispute the accuracy of this statement but, as Bezek has failed to describe or provide evidence of any perjury occurring in the underlying arbitration, the court concludes that this legal principle is irrelevant.

The court has reviewed Bezek's Motion to Vacate and the supporting exhibits, and has identified no basis upon which to find that Bezek has made it "abundantly clear that [the Award] was obtained through corruption, fraud, or undue means." Kolel Beth Yechiel Mechil, 729 F.3d at 104. Therefore, the court concludes that vacatur is not warranted pursuant to section 10(a)(1).

B.    Evident Partiality or Corruption

Section 10(a)(2) of the FAA permits vacatur "where there was evident partiality or corruption in the arbitrator[ ]." 9 U.S.C. § 10(a)(2). "A showing of evident partiality must be direct and not speculative." Kolel Beth Yechiel Mechil, 729 F.3d at 104. In addition, "[e]vidence of corruption must be abundantly clear in order to vacate an award under § 10(a)(2)." Id.

In support of her argument pursuant to section 10(a)(2), Bezek asserts that "NBC Universal is a JAMS ADR client and they have a 'close relationship' since April 2014." Mot. to Vacate at 8. She further asserts that NBC and JAMS "knowingly withheld" this fact. Id. She asserts that counsel for NBC "push[ed] to use only and exclusively JAMS ADR," presumably because JAMS was biased in NBC's favor. Id. at 8–9. Bezek does not provide any evidence to support these assertions.

The court concludes that Bezek's allegations regarding the arbitrator's bias are speculative and fail to make it "abundantly clear" that the arbitrator was partial or

corrupt.  Kolel Beth Yechiel Mechil, 729 F.3d at 104.  Therefore, the court concludes that vacatur is not warranted pursuant to section 10(a)(2).

      C.     Arbitrator Misconduct

Section 10(a)(3) of the FAA permits district courts to vacate arbitration awards if the arbitrator was "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).  The Second Circuit has interpreted section 10(a)(3) to mean that, "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review."  Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).  "Arbitral misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator."  Oracle Corp. v. Wilson, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (quoting In re Cragwood Managers, L.L.C. (Reliance Ins. Co.), 132 F. Supp. 2d 285, 287 (S.D.N.Y. 2001)).

Bezek argues that Arbitrator Segall was guilty of misconduct for "refusing to postpone the hearing" based on a Motion for Extension of Time filed in this case, not the underlying arbitration.  See Mot. for Extension of Time (Doc. No. 23).  This court granted that Motion for Extension of Time on January 22, 2018, giving Bezek until February 26, 2018, to respond to NBC's Motion to Compel Arbitration (Doc. No. 20). See Order (Doc. No. 24).  Based on that Motion for Extension of Time filed in this action, Bezek argues that Arbitrator Segall "disregarded the law" and continued requesting a response to NBC's Motion for Summary Disposition in the arbitration.  Mot. to Vacate at 4.

13

The court concludes that Bezek has failed to show error on Arbitrator Segall's part, much less the kind of bad faith or gross error typical of section 10(a)(3) arbitral misconduct. The Motion for Extension of Time to which Bezek refers was filed in this court; it related exclusively to the time allotted for Bezek to respond to NBC's Motion to Compel Arbitration, as Bezek herself stated in that Motion. <u>See</u> Mot. for Extension of Time (Doc. No. 23). Nothing in that Motion requested that this court prohibit Arbitrator Segall from taking any action in the underlying arbitration, such as moving forward with the arbitrator or the arbitration, nor did this court's Order granting that Motion have any legal effect on the arbitration proceedings. The sole outcome of this court's Order on that Motion was to extend a deadline for Bezek in <u>this</u> action. <u>See</u> Order (Doc. No. 24).

The court has reviewed the arguments raised in Bezek's Motion to Vacate and the evidence attached thereto, and finds nothing to indicate that the "fundamental fairness" of the underlying arbitration was violated. <u>Tempo Shain Corp.</u>, 120 F.3d at 20. Therefore, the court concludes that vacatur is not warranted pursuant to section 10(a)(3).

D. <u>Powers Exceeded or Improperly Executed</u>

Section 10(a)(4) of the FAA provides for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "'consistently accorded the narrowest of readings' to this provision of law in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." <u>ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.</u>, 564 F.3d 81, 85 (2d Cir. 2009) (internal citations omitted) (quoting <u>Banco de Seguros del Estado v. Mut. Marine Office, Inc.</u>, 344 F.3d

255, 262 (2d Cir. 2003)).  The burden is on the moving party, in this case Bezek, to show that the arbitrator exceeded his authority.  See Blue Tee Corp. v. Koehring Co., 999 F.2d 633, 636 (2d Cir. 1993).  The focus of the jurisdictional inquiry for the purposes of section 10(a)(4) is the scope of the contract between the parties, namely "whether the arbitrator[ ] had the power based on the parties' submission or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue."  Banco de Seguros, 344 F.3d at 262 (quoting Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 220 (2d Cir. 2002)).

Bezek raises several arguments under section 10(a)(4), which the court has reviewed.  Of those arguments, the only ones relevant to section 10(a)(4) are Bezek's arguments that she did not agree to arbitrate her claims with NBC and that her former counsel at Axelrod and Associates did not have authority to initiate arbitration on her behalf.  Bezek argues that, absent an agreement to arbitrate or an initiation of arbitration on her behalf, JAMS and Arbitrator Segall lacked the authority to arbitrate the dispute.  See Mot. to Vacate at 13–14.  These arguments go to the arbitrability of the dispute between Bezek and NBC.

### 1.  Standard for Determining Arbitrability

"A dispute is arbitrable only if the parties contractually bind themselves to arbitrate it."  Telenor Mobile Comms. AS v. Storm LLC, 584 F.3d 396, 405–06 (2d Cir. 2009).  "A question of arbitrability is therefore raised when, as here, someone asserts that an arbitral award should not be enforced because there was no effective agreement to arbitrate the dispute."  Id. at 406.

The court notes that arbitrability is typically a question addressed in the context of a motion to compel arbitration pursuant to section 4 of the FAA.  See 9 U.S.C. § 4 ("If

the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to a trial thereof.").  However, the Second Circuit has addressed arbitrability in the context of a motion to confirm an arbitration award pursuant to section 9 of the FAA where, as here, the party challenging the award argued that the individual who agreed to arbitrate lacked the authority to do so.  See Telenor Mobile Comms. AS, 584 F.3d at 411–12.  Therefore, the court will address Bezek's arbitrability argument as it applies to sections 9 and 10 of the FAA within the framework that has been developed for motions to compel pursuant to section 4.

Arbitrability disputes under the FAA are governed by a summary judgment standard.  See Alvarez v. Coca-Cola Refreshments, USA, Inc., 914 F. Supp. 2d 256, 256 (E.D.N.Y. 2012).  If there is a genuine dispute of material fact as to the existence or validity of an agreement to arbitrate or a breach of that agreement, the parties are entitled to a jury trial on the disputed facts.  Telenor Mobile Comms. AS, 584 F.3d at 411; see Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012) ("[A] trial is warranted only if there exists one or more genuine issues of material fact regarding whether the parties have entered into such an agreement.").  In order to create a genuine issue of material fact, bare denials of an agreement to arbitrate are insufficient. "[T]he party putting the agreement to arbitrate in issue must present 'some evidence' in support of its claim before a trial is warranted."  Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co., 263 F.3d 26, 30 (2d Cir. 2001); Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945) ("To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial.").  For example,

the Second Circuit has concluded that there was "sufficient evidence" to "substantiat[e]" a party's "unequivocal denial that the agreement was made" where that party "ha[d] repeatedly and unambiguously asserted that the reinsurance contracts [were] void because its agents had no authority to form those contracts."  Bank of America, N.A. v. Diamond State Ins. Co., 38 Fed. App'x 687, 690 (2d Cir. 2002) (summary order).

In determining whether parties have agreed to arbitrate, state law applies.  See Trilegiant, 697 F.3d at 119; Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45 (2d Cir. 1993).  The Solutions Manual includes a choice of law provision selecting New York law.  See Solutions Manual at 48.  However, because the dispute before the court is whether the Solutions Manual is part of the employment contract between the parties, the choice of law provision in the Solutions Manual "does not determine the law that the [c]ourt should apply to determine whether the arbitration clause was part of any agreement between the parties unless and until it is determined that the parties have agreed to and are bound by it."  Trilegiant, 697 F.3d at 199; but see Motorola Credit Corp. v. Uzan, 388 F.3d 39, 50 (2d Cir. 2004), cert. denied sub nom., 544 U.S. 1044 (2005) ("[A] choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract.").

Because this court has diversity jurisdiction over this case, Connecticut's choice of law rules apply to this dispute.  See Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001) ("A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law.").  Connecticut has substantially adopted the Restatement (Second) of Conflict of Laws for its choice of law rules.  See General Accident Ins. Co. v. Mortara, 314 Conn. 339, 346 (2014) (noting

that section 188 of the Restatement (Second) governs contracts without choice of law provisions). Section 188(2) directs courts to consider several factors to determine the law that should be applied, including: (1) "the place of contracting;" (2) "the place of negotiation of the contract;" (3) "the place of performance;" (4) "the location of the subject matter of the contract;" and (5) "the domicil, residence, nationality, place of incorporation, and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. In addition, Section 188(3) states, "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." Id. at § 188(3).

In this case, Bezek and NBC initially entered into an employment contract in New York and Bezek's work was performed in New York. However, at the time that the underlying dispute arose between the parties, Bezek had entered into an employment contract in Connecticut and was working in Connecticut. The mediation between the parties in 2016 took place in Connecticut (although Bezek appeared by telephone from Florida). NBC is a California-based corporation, while Bezek resides in Florida. Considering the totality of the relevant factors, the court concludes that the contacts with Connecticut are the most important "with respect to the particular issue" before the court, and Connecticut state law should be applied to this dispute.[3]

---

[3] The court notes that application of New York contract law to the agreement between the parties would lead the court to the same outcome that Connecticut law produces because, in relevant respects, New York contract law and Connecticut contract law are substantially the same. See Trilegiant, 697 F.3d at 119 ("Connecticut and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term."); Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 ("New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" (quoting Trilegiant, 697 F.3d at 119)).

## 2. Employment Contingent on Arbitration Agreement

NBC argues that Bezek agreed to be bound by the Solutions Manual when she accepted her offers of employment in 2010 and 2013. See, e.g., NBC's Reply at 5–8. NBC bases this argument on the language of the 2010 and 2013 Offer Letters, the fact that Bezek completed training on an updated version of the Solutions Manual in January 2011, and the 2013 Acceptance that NBC alleges Bezek signed and submitted. See, e.g., id.; see also 2010 Offer Letter ("This offer is made expressly contingent on your . . . agreement to be bound by Solutions — An Alternative Dispute Resolution Program as evidenced by your signing the Solutions Agreement Form."); 2013 Offer Letter ("The agreements you previously signed regarding Solutions: An Alternative Dispute Resolution Program . . . shall remain in full force and effect."); 2013 Acceptance ("I acknowledge that I have received and reviewed a copy of 'Solutions: An Alternative Dispute Resolution Procedure ("Solutions"). I agree to resolve disputes in accordance with the terms of Solutions and, accordingly, I waive the right to pursue any Covered Claim (as defined in Solutions) against the Company (1) in court or (2) on a class action basis either in court or through Solutions.").

With respect to the 2013 Acceptance form, Bezek asserts that she did not electronically sign it. See Pl.'s Opp. at 12 ("Ms. Bezek believes that her signature dated June 4 2013 is fraudulent as she does not recall ever signing an online waiver agreement."). However, "bare denials" are not sufficient to create a genuine dispute of material fact regarding the existence of an arbitration agreement. McAllister v. East, 611 Fed. App'x 17, 20 (2d Cir. 2015) ("[McAllister] may not defeat the motion to compel arbitration by resting on her bare denials that she did not receive the handbooks, but instead 'must submit evidentiary facts showing that there is a dispute of fact to be tried.'"

(quoting Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995))); see Vardanyan v. Close-Up Int'l, Inc., 315 Fed. App'x 315, 318 (2d Cir. 2009) (summary order) (party's statement "that he does not remember whether he signed the document" did not create a genuine dispute of material fact where party "submitted no admissible evidence supporting his claim that the agreement was fabricated"); Ferrie v. DirecTV, LLC, No. 3:15-CV-409 (JCH), 2016 WL 183474, at *5 (D. Conn. Jan. 12, 2016) ("[G]iven that DIRECTV has introduced evidence indicating that Ferrie received the e-mails, Ferrie cannot create a genuine issue of material fact as to whether he received them solely by asserting that he does not 'recall' receiving them.").

The only other argument that Bezek makes with respect to the 2013 Acceptance is that it "does not match up time and date." Mot. to Vacate at 6. However, Bezek herself alleges that she conducted a face-to-face interview at the Stamford, Connecticut NBC location on June 4, 2013, received a tour of the facility, and completed tax paperwork. See id. at 5–6. The 2013 Offer Letter itself is dated June 4, 2013. 2013 Offer Letter at 76. In addition, the 2013 Acceptance does not contain a date stamp, so it is unclear what Bezek means by referencing the "time" of the 2013 Acceptance. See 2013 Acceptance. In short, the court has reviewed the evidence before it and finds no support for Bezek's assertion that the date and time of the 2013 Acceptance do not "match up." Therefore, the court concludes that Bezek has provided no evidence tending to show that she did not electronically sign the 2013 Acceptance and, therefore, has failed to create a genuine dispute of material fact as to that issue.

Furthermore, Bezek's acceptances of the 2010 Offer Letter and 2013 Offer Letter, evidenced by her employment with NBC in New York and then Connecticut, are

sufficient, on their own, to bind her to the Solutions Manual in light of the language in

the 2010 and 2013 Offer Letters clearly incorporating the Solutions Manual.  See, e.g.,

Manigault v. Macy's East, LLC, 319 Fed. App'x 6, 8 (2d Cir. 2009) (continued

employment sufficient to manifest assent to terms of unsigned arbitration agreement).

As the Second Circuit has described in the context of a Connecticut contract law case,

whether a party to a contract is on sufficient notice of a contract term such that she "can

be legally held to have assented to it" is determined by applying

> various factors including, but not limited to, the
> conspicuousness of the term, the course of dealing between
> the parties, and industry practices.  Ultimately, however, the
> touchstone of the analysis is whether reasonable people in
> the position of the parties would have known about the terms
> and the conduct that would be required to assent to them.

Trilegiant, 697 F.3d at 124 (internal citation omitted).

In this case, the court concludes that both the 2010 Offer Letter and the 2013

Offer Letter were sufficient to put Bezek on inquiry notice of the Solutions Manual,

therefore binding Bezek to the terms of the Solutions Manual regardless of whether she

read that document.  The Offer Letters are relatively short: the 2010 Offer Letter is three

pages in length, while the 2013 Offer Letter is only one page long.  The first page of the

2010 Offer Letter, in the second paragraph, lists seven contingencies for employment,

the third of which is "agreement to be bound by Solutions – An Alternative Dispute

Resolution Program."  2010 Offer Letter at 70.  Then, on the third page of the 2010

Offer Letter, in a list of seven tasks that must be completed by the offeree, the fifth task

is "Sign the enclosed Solutions – An Alternative Dispute Resolution Procedure

Acknowledgement form."  2010 Offer Letter at 72.  The 2013 Offer Letter states, "The

agreements you previously signed regarding Solutions: An Alternative Dispute

Resolution Program . . . shall remain in full force and effect." 2013 Offer Letter. Bezek has not argued, much less submitted evidence tending to show, that she did not receive the 2010 Offer Letter or the 2013 Offer Letter. Both the 2010 Offer Letter and the 2013 Offer Letter conspicuously incorporate the Solutions Manual and are sufficient to place Bezek on inquiry notice of the terms contained therein. See 2010 Offer Letter, 2013 Offer Letter. Therefore, the court concludes that a reasonable person in Bezek's position would have known that, by accepting her 2010 and 2013 offers, she was agreeing to be bound by the Solutions Manual. See Trilegiant, 697 F.3d at 124.

Bezek asserts that she never received the Solutions Manual. See Mot. to Vacate at 6. However, pursuant to Connecticut contract law, if a document is incorporated by reference in a contract, such incorporation by reference "produces a single contract which includes the contents of the incorporated papers." Randolph Constr. Co. v. Kings East Corp., 165 Conn. 269, 275 (1973); see Bernhard-Thomas Bldg. Sys., LLC v. Weitz Co., LLC, No. 3:04-CV-1317 (CFD), 2011 WL 5222682, at *2 (D. Conn. Oct. 31, 2011). Furthermore, "[t]he documents incorporated need not be attached to the contract nor signed or initialed unless the contract so requires." Randolph Constr. Co., 165 Conn. at 275. This is true even if the incorporated document was not provided to the party accepting a contract. See 566 New Park Assocs., LLC v. Blardo, 97 Conn. App. 803, 811 n.5 (2006) (rejecting the defendants' argument that an incorporated document was not provided on the basis that it was the defendants' responsibility "to become familiar with all the terms of the contract, including terms incorporated by reference"); Pingel v. General Elec. Co., No. 3:14-CV-632 (CSH), 2014 WL 7334588, at *10 (D. Conn. Dec. 19, 2014) ("Courts have concluded that a contractual obligation to arbitrate exists where

an employer has made an agreement to arbitrate available to its employees, even if the employer has not physically tendered a hard copy of the agreement to its employees."). Therefore, even assuming that Bezek never received a copy of the Solutions Manual, she was nevertheless bound by it because it was plainly and unambiguously incorporated into both the 2010 and 2013 Offer Letters.

In addition, Bezek has not consistently and unequivocally denied that she signed the 2013 Acceptance. See Diamond State Ins. Co., 38 Fed. App'x at 690. For example, in her Opposition to NBC's Motion to Compel, Bezek states that she had "doubt" that she had signed an arbitration agreement and was not "able to recall that fact." Pl's Opp. at 7. Bezek goes on to state that she "believes that her signature dated June 4 2013 is fraudulent as she does not recall ever signing an online waiver agreement." Id. at 12 (emphasis added). Furthermore, she has not provided any evidence to support that she did not sign the 2013 Acceptance, nor has she offered any alternative explanation aside from the general speculation that NBC forged that document.

More generally, Bezek has not "repeatedly and unambiguously asserted" that she is not bound by the Solutions Manual. Diamond State Ins. Co., 38 Fed. App'x at 690. To the contrary, she initiated and participated in Level III of Solutions, mediation, and then initiated Level IV of Solutions, arbitration. Furthermore, Bezek's former counsel notified her that a notice of arbitration was submitted on her behalf on March 30, 2017, see Exh. C, Pl.'s Opp. (Doc. No. 27) at 27, and Bezek took no steps to withdraw that notice or otherwise alert JAMS or opposing counsel that she was not consenting to arbitration until August 2017. See Exh. O, Mot. to Compel (Doc. No. 20-

2) at 102.  The court concludes, based on this history, that Bezek has neither unequivocally denied the existence of an agreement nor come forward with sufficient evidence to create a genuine dispute of material fact that such an agreement exists.

Therefore, for all the reasons articulated above, the court concludes that Bezek has failed to create a genuine dispute of material fact with respect to the existence of a binding arbitration agreement between Bezek and NBC.

### 3.  Counsel's Initiation of Arbitration

Having concluded that Bezek agreed to be bound by the Solutions Manual, the next question for the court is whether Bezek initiated arbitration of the claims raised in the underlying arbitration, which are identical to the claims alleged in her Complaint before this court.  See infra Section I (comparing the Specification of Claims in the underlying arbitration to the operative Complaint in this action).

If former counsel for Bezek at Axelrod and Associates was authorized to initiate arbitration on Bezek's behalf, he clearly bound her to arbitrate her claims by serving an arbitration complaint on NBC and then, with NBC, submitting a joint application to arbitrate.  See Exh. M, Mot. to Compel (Doc. No. 20-2) at 98 ("The parties are commencing the arbitration pursuant to Solutions, the alternative dispute resolution procedure to which the parties agreed during Ms. Bezek's employment with NBCUniversal.").  However, Bezek argues that her former counsel was not acting with her authority when he initiated the arbitration.

In support of that argument, Bezek cites an email sent to her by former counsel on March 30, 2017, in which former counsel states, "I have been tied up all afternoon.  I would like to talk tomorrow early afternoon.  Your arbitration notice is filed.  Remember that we have not committed to future representation at this point."  Exh. C, Pl.'s Opp.

(Doc. No. 27-1) at 7. Based on this correspondence, Bezek asserts, "It is clear that former counsel made an error as there was not a valid retainer in place between plaintiff and his law firm to move forward with Arbitration." Pl.'s Opp. at 7–8. Bezek provides no additional evidence to support her argument that counsel was acting outside his authority in initiating arbitration.

Whether former counsel at Axelrod and Associates had authority to initiate arbitration on Bezek's behalf is a question of agency. In Connecticut, "the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal, and within the scope of the agent's employment." Ackerman v. Sobol Family P'ship, LLP, 298 Conn. 495, 508 (2010). Authority may be actual, as in expressly authorized by the principal, or it may be apparent. Id. "Apparent authority is that semblance of authority which a principal, through [her] own acts or inadvertences, causes or allows third persons to believe [her] agent possesses." Id. Connecticut has established two conditions that must be met for apparent authority to exist: (1) "it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority;" and (2) "the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." Id. at 508–09.

Bezek has failed to create a genuine issue of material fact regarding former counsel at Axelrod and Associates' actual or apparent authority to submit her claims to arbitration. To the contrary, the only evidence she has provided ostensibly in support of

her position—the correspondence from former counsel to Bezek—actually tends to show the opposite: that counsel informed her of his having filed the arbitration notice suggests that he was acting within his role as her agent to file that position.  <u>See</u> Exh. C, Pl.'s Opp. at 7.  In addition, former counsel's statement that "we have not committed to future representation at this point" does not suggest that a principal-agent relationship did not exist at the time the arbitration notice was filed, but rather that—in contrast to the past and present—the <u>future</u> was unclear with respect to their relationship.  <u>See</u> <u>id.</u> Furthermore, Bezek has offered no evidence to suggest that she objected to her former counsel's filing of the arbitration notice, or otherwise indicated her disapproval to former counsel or to NBC at the time the notice was filed.  Finally, Bezek has offered no explanation as to why former counsel would initiate arbitration on her behalf without authorization.  <u>See</u> <u>Telenor Mobile Comms. AS</u>, 584 F.3d at 411–12 (concluding that a trial on the issue of arbitrability was not needed where the movant "failed to explain why [its agent] would sign the agreement [to arbitrate] without authorization" and where the movant sent "a variety of signals that [the agent] had the authority to execute the [arbitration agreement]").

Furthermore, even if Bezek had created a genuine dispute of material fact as to the actual authority that former counsel had to file the arbitration notice, she has submitted no evidence to create a dispute of fact as to former counsel's apparent authority.  It is undisputed that Axelrod and Associates was representing Bezek in the dispute with NBC as early as November 6, 2016.  <u>See</u> Exh. K, Mot. to Compel ("Mediation Request") (Doc. No. 20-2) at 88 ("Our law firm has been retained to represent Ms. Paola Bezek.").  Axelrod and Associates represented Bezek at the

26

mediation on February 24, 2017, at which Bezek appeared via telephone. See Pl.'s Opp. at 5–6. Approximately a week after the arbitration notice was submitted, on June 1, 2017, former counsel at Axelrod and Associates contacted counsel for NBC to notify counsel for NBC "that we are no longer representing Ms. Paola Bezek in this matter." Exh. N, Mot. to Compel (Doc. No. 20-2) at 100. Bezek has provided no evidence upon which a rational juror might infer that NBC should have concluded that Axelrod and Associates lacked authority to initiate arbitration on her behalf.

For the reasons stated above, the court concludes that Bezek has failed to create a genuine dispute of material fact as to whether former counsel at Axelrod and Associates acted within its actual or apparent authority in initiating arbitration on her behalf. Having concluded that Bezek was bound by the Solutions Manual upon accepting employment with NBC in 2010 and 2013, and further having concluded that Bezek initiated arbitration through counsel in 2017, the court finds that she has failed to carry her burden of showing that Arbitrator Segall exceeded his authority. Therefore, the court concludes that vacatur is not warranted pursuant to section 10(a)(4).

In light of the court's conclusions that vacatur is not warranted on any of the grounds alleged by Bezek, NBC's Motion to Confirm (Doc. No. 34) is granted and Bezek's Motion to Vacate (Doc. No. 36) is denied.

## III.     MOTION TO COMPEL ARBITRATION (DOC. NO. 20)

NBC moves to compel arbitration of the claims Bezek raises in her Complaint pursuant to section 4 of the FAA, title 9 section 4 of the United States Code. See Mot. to Compel (Doc. No. 20). To a great extent, NBC's Motion to Compel was rendered moot by the issuance of the Award on February 8, 2018, and by this court's Ruling, above, confirming that Award. See supra Section II; see also supra Section I (noting

that the Specification of Claims in the arbitration and the Complaint in this case are virtually identical). However, the court nevertheless reaches the merits of NBC's Motion to Compel, as motions pursuant to section 4 and motions pursuant to section 9 present somewhat different questions. The court's Ruling, above, granting NBC's Motion to Confirm and denying Bezek's Motion to Vacate specifically addresses the validity of the Award, which Award addressed the claims raised in the Specification of Claims submitted by Bezek through former counsel on April 21, 2017. See Award at 1. A motion to compel pursuant to section 4, on the other hand, presents a broader inquiry as to the scope of the arbitration agreement between the parties. While, in many cases, a final arbitration award may eliminate the need for a motion to compel pursuant to section 4, that is not the case here, for reasons explained below. See infra Section IV. Therefore, the court reaches the merits of NBC's Motion to Compel.

Section 4 provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. In other words, a party opposing a motion to compel arbitration may challenge the existence or enforceability of an arbitration agreement, or may challenge the applicability of such an agreement to the claims at issue.

In her Opposition to NBC's Motion to Compel, as in her Motion to Vacate, Bezek's primary contention is that she was not a party to a binding arbitration agreement. See, e.g., Pl.'s Opp. at 11 (denying that her employment was contingent on an agreement to arbitrate). She also argues that the arbitration clause cannot be enforced against her Title VII claims because that would preclude the vindication of her substantial rights to litigate pattern or practice claims pursuant to Title VII.

A.     <u>Agreement to Arbitrate</u>

Bezek's primary defense to the Motion to Compel is that she did not agree to arbitrate disputes arising out of her employment. See, e.g., Pl.'s Opp. at 11 ("Plaintiff did not sign or [give] any sort of consent to be bound[ ] by NBC's alternative dispute resolution program . . . ."). The court has already addressed this argument as it pertains to the Motions to Confirm and Vacate the Award, and hereby incorporates that analysis here. See <u>supra</u> Section II(D)(2). For the same reasons stated above, the court concludes that Bezek agreed to arbitrate when she accepted NBC's employment offers in 2010 and 2013.

A.     <u>Arbitration of Title VII Claims</u>

In her Opposition to the Motion to Compel, Bezek asserts that any arbitration agreement between the parties is unenforceable with respect to her Title VII claims because "a pattern or practice claim under Title VII can only be brought in the context of a class action." Pl.'s Opp. at 17. In support of her argument that the arbitration agreement is not enforceable as to her Title VII claims, Ms. Bezek cites the court to a 2011 case from the Southern District of New York, <u>Chen-Oster v. Goldman, Sachs & Co.</u>, 785 F. Supp. 2d 394 (S.D.N.Y. 2011).

As a threshold matter, the court notes that the Complaint before the court in Chen-Oster was a putative class action Complaint, and the court based its decision on the fact that "pattern or practice" claims can only be brought in a class action context. Id. The question before the court was whether an arbitration agreement that waived the right to arbitrate as a class was enforceable. Although Ms. Bezek makes references to a class in her briefings, she did not file a putative class action Complaint and her factual allegations are specific to her personal experience at NBC. See generally Compl. In other words, this is not a class action or a proposed class action and, therefore, the relationship between the FAA and pattern or practice claims under Title VII is irrelevant.

Even if this were a class action alleging pattern and practice claims, however, the Second Circuit overturned the lower court Oster-Chen decision in 2013. See Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 486–87 (2d Cir. 2013). In overturning that decision, the Second Circuit noted that "courts have consistently found that [Title VII] claims can be subject to mandatory arbitration." Id. at 487 (quoting Ragone v. Atl. Video, 595 F.3d 115, 120 (2d Cir. 2010))).

For these reasons, the court concludes that Ms. Bezek's Title VII claims are subject to arbitration.

B.  Scope of the Arbitration Agreement

Aside from her arguments regarding Title VII claims specifically, see supra Section III(A), Bezek does not argue that her claims are outside the scope of the arbitration agreement. The court addresses the scope of the agreement only briefly, therefore, to note that the agreement is broad. The Solutions Manual states that it covers "all claims that arise out of or are related to an employee's employment or cessation of employment (whether asserted by or against the Company), where a court

in the jurisdiction in question would otherwise have the authority to hear and resolve the

claim under any federal, state or local . . . statute, regulation, or common law."

Solutions Manual at 43.  In addition, the Solutions Manual provides as follows:

> The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this Agreement including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void.[4]

Id. at 60.  In other words, this provision delegates to the arbitrator the question of

whether a claim is within the scope of the arbitration agreement.

"[T]he general presumption is that the issue of arbitrability should be resolved by

the courts," Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121,

125 (2d Cir. 2006), but parties may delegate question of the scope of an arbitration

clause "to the arbitrator if there is clear and unmistakable evidence from the arbitration

agreement, as construed by the relevant state law, that the parties intended that the

question of arbitrability shall be decided by the arbitrator."  Contec Corp. v. Remote Sol.

Co., 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks omitted); see also

Alliance Bernstein, 445 F.3d at 125.  As the Supreme Court has explained,

> [A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement.  [The Supreme Court has] recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . . An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement

---

[4] The court notes that, to the extent that this provision purports to delegate to the arbitrator the question of whether the agreement between the parties exists, that provision is unenforceable.  See, e.g., Trilegiant, 697 F.3d at 118 ("Inasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate, the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator.").

> just as it does on any other. The additional agreement is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by . . . compelling arbitration under § 4.

Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68–70 (2010) (internal quotation marks and citations omitted).

The Solutions Manual at issue here clearly delegates questions of the scope of the arbitration agreement to the arbitrator. Therefore, to the extent that Bezek takes issue with the applicability of the Solutions Manual to her claims, that is a question for the arbitrator, not this court, to determine.

Having concluded that no genuine dispute of material fact exists with respect to the agreement to arbitrate, the court grants NBC's Motion to Compel to the extent that it is not moot in light of the court's Ruling, above, granting NBC's Motion to Confirm and denying Bezek's Motion to Vacate. See supra Section II.

## IV.    MOTION TO AMEND THE COMPLAINT (DOC. NO. 25)

Bezek moves to amend her Complaint to add claims of libel and slander pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"). See Mot. to Am. (Doc. No. 25) at 4–5. Bezek's Motion to Amend was filed more than 21 days after NBC filed its Motion to Compel and Dismiss (Doc. No. 20), which means that she may not amend as of right but may amend only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 mandates that "[t]he court should freely give leave when justice so requires." Id. Despite this liberal standard, the Second Circuit has held that "motions to amend should generally be denied in instances of futility." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008).

NBC objects to Bezek's Motion to Amend on three grounds: (1) amendment would be futile because Bezek's proposed claims are covered by the arbitration agreement, Opp. to Am. (Doc. No. 28) at 6–8; (2) amendment would be futile because the proposed claims are barred by the applicable statute of limitations, id. at 9; and (3) Bezek fails to state a claim in her proposed amended complaint, id. at 9–14. Because the court concludes that amendment would be futile on the first basis asserted by NBC, namely that the proposed claims are covered by the arbitration agreement between the parties, the court does not reach the remainder of NBC's arguments.

In the analysis above, the court has already concluded that Bezek agreed to arbitrate "all claims that arise out of or are related to an employee's employment or cessation of employment . . . , where a court in the jurisdiction in question would otherwise have the authority to hear and resolve the claim under any federal, state or local . . . statute, regulation, or common law." Solutions Manual at 43; see supra Section III(B)–(C). Bezek has not asserted that her proposed new claims are outside the scope of the arbitration agreement, but even if she had raised such an argument, this court would lack the authority to entertain it: the arbitration agreement delegates such determinations to the arbitrator. See Solutions Manual at 60 ("The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability . . . of this Agreement . . . ."). In light of the court's conclusions regarding the existence of a binding agreement to arbitrate and the delegation provision in the arbitration agreement, the court concludes that it is for the arbitrator to decide whether the proposed claims arise out of Bezek's employment or cessation of employment. Accordingly, amendment of the Complaint would be futile. See, e.g.,

Ferrie, 2016 WL 183474, at *15 (denying motion to amend as futile where proposed claims arose under arbitration agreement); Sherman v. Travelers Indem. Co., No. 3:10-CV-694 (JBA), 2011 WL 1628011, at *3 (D. Conn. Apr. 28, 2011) (same).

Therefore, Bezek's Motion to Amend (Doc. No. 25) is denied.

## V.  CONCLUSION

For the foregoing reasons, the Motion to Compel (Doc. No. 20) and Motion to Confirm Arbitration Award (Doc. No. 34) filed by the defendants, NBC Universal and NBC Sports Group, are **granted** and the Motion to Vacate Arbitration Award (Doc. No. 36) and Motion to Amend Complaint (Doc. No. 25) are **denied**.  The Clerk is directed to close this case.

**SO ORDERED**.

Dated this 23rd day of May 2018 at New Haven, Connecticut.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge